## Peter LOWRY

v.

## COMMONWEALTH OF CANADA.

### Civil No. 95–cv–236.

United States District Court,
D. Vermont.

Feb. 14, 1996.

David J. Williams, St. Johnsbury, VT, for Plaintiff.

Tristram J. Coffin, Assistant U.S. Attorney, Burlington, VT, Ford C. Ladd, U.S. Department of Justice, Washington, DC, for Defendant.

### RULING ON DEFENDANT'S MOTION TO DISMISS

(Paper 2)

MURTHA, Chief Judge.

The plaintiff alleges the defendant's military activities on the Vermont border damaged his birds by flying too low. Defendant Commonwealth of Canada has moved to dismiss the instant action for lack of jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendant's motion to dismiss is GRANTED.

### I. BACKGROUND

When ruling on a motion to dismiss, the Court is required to accept as true all well-pled, material facts alleged in the Complaint. *See Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). Therefore, for the purpose of deciding the instant motion, the

Court accepts the following allegations as true.

On December 15, 1992, a Canadian military helicopter overflew plaintiff's property in Albany, Vermont. *See* Declaration of Livio G. Paronuzzi (Exhibit A attached to paper 3). The flight was a training exercise. *See id.* at ¶¶ 4–5. Plaintiff, who breeds birds, alleges the helicopter was operating at a low altitude in violation of 5 V.S.A. § 421 and 14 C.F.R. § 91.119. *See* Complaint (paper 1) at ¶ 4. Plaintiff alleges the resulting disturbance killed two parrots and damaged his breeding population of birds. *See id.* at ¶¶ 5–6. He seeks compensatory damages for his loss.

Defendant argues the Court must dismiss this action as barred by the Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of their Forces, June 19, 1951, 4 U.S.T. 1792 (hereinafter "SOFA"). Plaintiff maintains the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1605(a)(5).

## II. DISCUSSION

■ The courts of the United States have jurisdiction over foreign nations in actions for damage to property, occurring in the United States and caused by the tortious act or omission of the state or its officials or employees. *See* 28 U.S.C. § 1605(a)(5). However, "if a remedy is available under [SOFA], the foreign state is immune from such tort claims." H.R.Rep. No. 94–1487, 94th Cong.2d Sess. 21 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6620.

Article VIII, paragraph 5 of SOFA provides:

Claims ... arising out of acts or omissions of members of a force ... done in the performance of official duty, or out of any other act, omission, or occurrence for which a force ... is legally responsible, and causing damage in the territory of the receiving State to third parties, ... shall be dealt with *by the receiving State* in accordance with the following provisions:

(a) Claims shall be filed, considered, and settled or adjudicated in accordance with the laws and regulations of the receiving

State with respect to claims arising from the activities of its own armed forces.

4 U.S.T. at 1806 (emphasis added). A "force" is defined as:

[T]he personnel belonging to the land, sea, or air armed services of one Contracting Party when in the territory of another Contracting Party in the North Atlantic Treaty area in connection with their official duties.

4 U.S.T. at 1794. The "receiving State" means the NATO member-nation in whose territory "the force .... is located, whether it be stationed there or passing in transit." 4 U.S.T. at 1794.

■ "In the case of torts committed in the performance of duty, the local citizen who is injured proceeds against his own government exactly as he would if the injury had been caused by a member of his own government's armed forces." *Shafter v. United States*, 273 F.Supp. 152, 156 n. 4, (S.D.N.Y.1967), *aff'd*, 400 F.2d 584 (2d Cir.1968), *cert. denied*, 393 U.S. 1086, 89 S.Ct. 871, 21 L.Ed.2d 779 (1969) (quoting S.Exec.Rep. No. 1, 83d Cong., 1st Sess. 13–14 (1953)); *accord Brown v. Ministry of Defense of the United Kingdom of Great Britain*, 683 F.Supp. 1035, 1038 (E.D.Va.1988). Accordingly, the effect of SOFA is to make the United States the only appropriate defendant in this suit.

■ Nevertheless, the plaintiff maintains because there is no evidence the helicopter was on a NATO mission, this Court has jurisdiction over the Canadian government pursuant to 28 U.S.C. § 1605(a)(5). However, a connection to a NATO mission is not essential to the applicability of SOFA. *Aaskov v. Aldridge*, 695 F.Supp. 595, 597 (D.D.C. 1988).

The negotiating history shows quite clearly that the drafters considered and then expressly rejected a proposal to limit the scope of the treaty to members of armed services "in conne[ct]ion with the operation of the North Atlantic Treaty." NATO Agreements on Status: Travaux Preparatoires 163 (J. Snee ed. 1966). Rather, the drafters agreed on a simple geographical, not a purposive, test for applicability of the treaty by defining a "force" as members of

the armed services "when in the territory of another Contracting Party in the North Atlantic Treaty area in conne[ct]ion with their official duties."

*Id.* at 596–97 (citation omitted); *see Shafter,* 273 F.Supp. at 159 ("Article VIII contemplates . . . the 'forces' it governs will normally be under . . . their respective contracting governments, not with some merged NATO command.") Thus, SOFA is the sole remedy for line-of-duty torts committed by the armed forces of one NATO nation within the territorial boundaries of another NATO nation. *See Aaskov,* 695 F.Supp. at 597.

## III. CONCLUSION

In light of the foregoing analysis, the Court finds SOFA bars plaintiff's action against the Commonwealth of Canada. Accordingly, defendant's motion to dismiss for lack of jurisdiction is GRANTED.

SO ORDERED.